**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| REALZOOM LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:17-CV-00118-RWS |
| | § | |
| L BRANDS, INC., VICTORIAS SECRET | § | |
| STORES, LLC, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On January 10, 2018, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 7,774,712 ("the '712 Patent"). The Court has considered the arguments made by the parties at the hearing and in their claim construction briefs. Docket Nos. 45, 46, & 48.[1] The Court has also considered the intrinsic evidence and made subsidiary factual findings about the extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The Court issues this Claim Construction Memorandum and Order in light of these considerations.

### I.     BACKGROUND

The '712 Patent was filed on December 31, 2004, was issued on August 10, 2010 and is titled "Methods and Systems for Displaying an Enlarged Image." The disclosure is generally directed to displaying a first image and a portion of an enlarged version of the first image based on the position of a cursor. '712 Patent at Abstract, 1:36–46. The following figures demonstrate

---

[1] Pin cites refer to the page numbers assigned through the ECF system.

an exemplary embodiment of the recited claim elements. Starting with Figure 5, the figure illustrates an exemplary screen shot displaying a first image (52), with the cursor (28) positioned away from the first image. *Id.* at 8:5–14.



Figure 6 then illustrates an exemplary screen shot displaying the first image (52) of Figure 5, and a portion of an enlarged version of the first image (212). *Id.* at 8:15–32.



Fig. 6

Figure 6 shows the cursor (28) over the first image (52), and the display of the corresponding portion of the enlarged version of the first image (212) on the screen. *Id.* The specification states that the cursor (28) takes the form of a point to decrease the amount of the first image (52) that is blocked by the cursor. *Id.* at 8:20–22.

Figure 7 illustrates a second exemplary screen shot displaying the first image (52) of Figure 5, and a different portion of the enlarged version of the first image (222). *Id.* at 8:33–54.



Fig. 7

Figure 7 shows the cursor (28) moved to a different portion of the first image (52), and the display of the corresponding different portion of the enlarged version of the first image. *Id.*

Claim 1 of the '712 Patent is an exemplary claim and recites the following elements (disputed term in italics):

> 1. 1. A method of displaying an enlarged image on a display of a client device running an *enlargement application* executed by a browser program, the client device configured to generate a user interface in which a user may control a *position of a cursor*, the method comprising:
>
> transmitting, over a network, a first image and an enlarged version of the first image from a server to the client device;
>
> displaying the first image at a first location on the display; determining whether the *position of the cursor* generated by the client device overlaps with the first location of the first image;
>
> if the *position of the cursor* overlaps with the first location of the first image, determining a *portion of the enlarged version of the first image* with the client device without requesting additional information from the server, where

the portion of the enlarged version of the first image is determined based on the *position of the cursor*;

displaying the portion of the enlarged version of the first image at *a second location on the display* of the client device while continuing to display the first image at the first location;

displaying an indication on the first image that indicates a portion of the first image that corresponds to the displayed portion of the enlarged version of the first image; and

*displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes.*

## II.    APPLICABLE LAW

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.' " *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.' " *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the

intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for

example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

### B.     Functional Claiming and 35 U.S.C. § 112, ¶ 6 (pre-AIA) / § 112(f) (AIA)[2]

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 & n.3 (Fed. Cir. 2015) (en banc in relevant portion). Section 112, Paragraph 6, provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).

But § 112, ¶ 6 does not apply to all functional claim language. There is a rebuttable presumption that § 112, ¶ 6 applies when the claim language includes "means" or "step for" terms, and that it does not apply in the absence of those terms. *Masco Corp.*, 303 F.3d at 1326; *Williamson*, 792 F.3d at 1348. The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (§ 112, ¶ 6 does not apply when "the claim language, read in light of the specification,

---

[2]   Because the application resulting in the '712 Patent was filed before September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of § 112.

recites sufficiently definite structure" (quotation marks omitted) (citing *Williamson*, 792 F.3d at 1349; *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014))); *Williamson*, 792 F.3d at 1349 (§ 112, ¶ 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure"); *Masco Corp.*, 303 F.3d at 1326 (§ 112, ¶ 6 does not apply when the claim includes an "act" corresponding to "how the function is performed"); *Personalized Media Communications, L.L.C. v. International Trade Commission*, 161 F.3d 696, 704 (Fed. Cir. 1998) (§ 112, ¶ 6 does not apply when the claim includes "sufficient structure, material, or acts within the claim itself to perform entirely the recited function . . . even if the claim uses the term 'means.' " (quotation marks and citation omitted)).

When it applies, § 112, ¶ 6 limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347. Construing a means-plus-function limitation involves multiple steps. "The first step . . . is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.* The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A.*,

*Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). However, § 112 does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

For § 112, ¶ 6 limitations implemented by a programmed general purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). The corresponding structure is not a general purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

### III.    CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning of six terms/phrases in the '712 Patent.

### A.   "displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes" | Plain and ordinary meaning.<br><br>ALTERNATIVELY:<br>"displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes in a direction where more of the enlarged version of the first image remains to be shown within its boundaries" | "displaying a different portion of the enlarged version of the first image with every change of the position of the cursor that overlaps with the first location" |

### 1.   The Parties' Positions

The parties dispute whether the phrase "displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes" requires construction. Plaintiff contends that the only difference between the claim language and Defendants' construction is the change of the phrase "whenever the position of the cursor changes" to "with

every change of the position of the cursor that overlaps with the first location." Docket No. 45 at 9. Plaintiff argues that the portions of the specifications cited by Defendants are more consistent with the ordinary claim language, and not Defendants' construction. *Id.* at 9-10 (citing '712 Patent at 6:24–32, 7:12–21, 8:36–54).

Defendants respond that their construction makes clear that "the claims require (1) the enlarged version of the image to change with every change of the cursor position, but (2) only when the cursor is over the smaller image." Docket No. 46 at 9. Defendants argue that the claim language requires "a different portion" of the enlarged image to be displayed "whenever the position of the cursor changes." *Id.* According to Defendants, the specification makes clear that the term "whenever" means "every time." *Id.* at 10 (citing '712 Patent at 7:12–21, 8:39–42, Figures 5–7). Defendants contend that the specification does not disclose a system in which the enlarged image does not change every time the cursor moves on the smaller image. Docket No. 46 at 10. (citing '712 Patent at 7:12–21). Defendants argue that the example of the system's functionality provided in the specification further supports their construction. Docket No. 46 at 10 (citing '712 Patent at 8:39–42).

Defendants also argue that the intrinsic record is clear that the enlarged image only changes positions when the position of the cursor overlaps the smaller image. Docket No. 46 at 11 (citing ('712 Patent at 7:17–20). Defendants contend that the example in the specification demonstrates that the claims require the position of the cursor to overlap with the smaller image before determining what portion of the enlarged image to display. Docket No. 46 at 11-12 (citing '712 Patent at 8:5–14, 8:24–30, 8:36–38). Defendants also argue that during prosecution, the patentees added "overlaps with the location of the first image" to the claims and argued that "display[ing] an enlarged version of a portion of the image only if the position of the cursor

overlaps with the location of the first image" distinguished their claims over the prior art. Docket No. 46 at 12 (citing Docket No. 46-3 at 10). Finally, Defendants argue that their construction is intended to provide the Court with the context necessary to understand how the term fits into the claims as a whole. Docket No. 46 at 13.

Plaintiff replies that nothing in the specification points to Defendants' construction as preferable to the actual language selected by the inventors. Docket No. 48 at 3. Plaintiff argues that claims must not be construed to include inventions the inventors did not invent. *Id.* at 4. According to Plaintiff, there was no circumstance in which the inventors invented a system that utilized an enlargement of content outside the borders of the original image. *Id.*

In the alternative, Plaintiff provides a construction and argues that it captures the essence of the invention. *Id.* at 5 (citing '712 Patent at 7:17–18, 8:46–49). Plaintiff argues that Figures 6 and 7 show that the "enlarged image" is always the same size, and it always reproduces only portions within the original image, and not content outside the boundaries of the original image. Docket No. 48 at 6. According to Plaintiff, its "alternate" construction is the only construction offered that stays true to the context of the actual invention. *Id.* at 7.

For the following reasons, the Court finds that the phrase **"displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes"** should be given its plain and ordinary meaning.

### 2. Analysis

The phrase "displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes" appears in asserted claims 1, 7, and 9 of the '712 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The Court further finds that the claim language is

unambiguous, is easily understandable by a jury, and should be given its plain and ordinary meaning.

Starting with claim 1, the first step in the claim is "transmitting, over a network, a first image and an enlarged version of the first image from a server to the client device." Claim 1 then recites "displaying the first image at a first location on the display" and "if the position of the cursor overlaps with the first location of the first image, determining a portion of the enlarged version of the first image . . . where the portion of the enlarged version of the first image is determined based on the position of the cursor." Claim 1 adds that the portion of the enlarged version of the first image is displayed at "a second location on the display of the client device while continuing to display the first image at the first location." Figure 6 provides an exemplary screen shot that illustrates these steps in the claim. Specifically, a first image (52) and a portion of the enlarged version of the first image (212) is displayed on the screen.



Fig. 6

'712 Patent at Figure 6. Claim 1 then recites the disputed phrase of "displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes." Figure 7, provides an example of displaying a different portion of the enlarged version of the first image, as recited in the claim.



Fig. 7

'712 Patent at Figure 7. As indicated by the claim language and the exemplary screen shots, "whenever the position of the cursor changes" a "different portion of the enlarged version of the first image" is displayed.

The specification further describes the exemplary screen shots illustrated in Figures 6 and 7 as follows:

> The position of the cursor 28 illustrated in FIG. 7, however, is different from the position of the cursor 28 illustrated in FIG. 6, and, subsequently, the screen shot 220 illustrates a different portion 222 of the second image 54 displayed at a second location. As previously described, the portion 222 differs from the portion

> 212 illustrated in FIG. 6 since the portion to be displayed by the workstation 20 depends on the position of the cursor 28. The center point or position of the portion 212 corresponds to the position of the cursor 28 on the first image 52, which is on the heel of one of the boots, as illustrated in FIG. 6. Likewise, the center point or position of the portion 222 corresponds to the position of the cursor 28 on the first image, which is on the top of the zipper of one of the boots, as illustrated in FIG. 7.

*Id.* at 8:39–52. In other words, the portion of the enlarged version of the first image changes "whenever the position of the cursor changes." Specifically, the specification states "the workstation 20 determines a position of the cursor 28 *whenever the position of the cursor 28 changes*, and consequently, every change of position of the cursor 28 that overlaps with the first location also causes the workstation 20 to determine a different portion of the second image 54 to replace the previously displayed portion based on the new position of the cursor 28." *Id.* at 7:16–21 (emphasis added). As indicated, "whenever the position of the cursor changes" a "different portion of the enlarged version of the first image" is displayed. The disputed language is easily understandable by a jury and should be given its plain and ordinary meaning.

Defendants contend that the word "whenever" means "every time." The Court disagrees, and finds that Defendants' construction reads an unwarranted limitation into the claims. The claim language recites that a different portion of the enlarged version is displayed "whenever the position of the cursor changes." In other words, a change in the position of the cursor that results in displaying a different portion of the enlarged version of the first image falls within the scope of the claims. In contrast, Defendants' proposal would add an additional "every time" requirement for even microscopic changes in the cursor position. Simply stated, the claim language is "whenever" there is a change, and not "every time" there is a change.

Defendants correctly argue that the specification states that "*every change* of position of the cursor 28 that overlaps with the first location also causes the workstation 20 to determine a different portion of the second image 54 to replace the previously displayed portion based on the

new position of the cursor 28." '712 Patent at 7:16–21 (emphasis added). However, the specification preferences this statement with "[i]n some embodiments." *Id.* at 7:14–15. More importantly, this is not the language the patentees used in the claims. It would be improper to redraft the claim language as "every change," instead of the recited "whenever." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."). Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties, and given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

The phrase **"displaying a different portion of the enlarged version of the first image whenever the position of the cursor changes"** will be given its plain and ordinary meaning.

### B. "position of the cursor"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| "position of the cursor" | Plain and ordinary meaning. | "coordinate on the display determined by the processor from the input of the cursor control device"<br><br>ALTERNATIVELY:<br>"location" or "position" for "coordinate." |

### 1. The Parties' Positions

The parties dispute whether the phrase "position of the cursor" requires construction. Plaintiff argues that Defendants' proposed "coordinate" does not appear in the specification. Docket No. 45 at 11. Plaintiff further argues that the portions of the specifications cited by Defendants are more consistent with the ordinary claim language, and not Defendants' construction. *Id.* (citing '712 Patent at 5:32–53).

Defendants respond that their construction is nearly identical to language from the specification. Docket No. 46 at 13 (citing '712 Patent at 5:32–36). Defendants argue that the examples in the specification confirm that the "position of the cursor" is the coordinate on the screen that corresponds with the input of the user's cursor control device. Docket No. 46 at 13-14. (citing '712 Patent at Figures 5–6). Defendants also contend that it is irrelevant that the term "coordinate" does not appear in the specification. Docket No. 46 at 15. According to Defendants, the figures clearly show the cursor at a location on the screen that would be understood to be a coordinate. *Id.* Defendants contend that they chose the word coordinate because it is a more precise term for representing a location on a display. *Id.*

Plaintiff replies that claim construction is not an exercise in "idealized" claim drafting. Docket No. 48 at 7. According to Plaintiff, there is no ambiguity requiring clarification, and therefore no need for any construction of this term. *Id.*

For the following reasons, the Court finds that the phrase **"position of the cursor"** should be given its plain and ordinary meaning.

### 2. Analysis

The phrase "position of the cursor" appears in asserted claims 1, 2, 7, 8, 9, and 10 of the '712 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The Court further finds that the claim language is unambiguous, is easily understandable by a jury, and should be given its plain and ordinary meaning.

The preamble of claim 1 recites that the client device is "configured to generate a user interface in which a user may control a position of a cursor." Claim 1 further recites that the first image is displayed at a first location on the display, and that a determination is made whether the

position of the cursor generated by the client device overlaps with the first location of the first image. Simply stated, the position of the cursor is the positon of the cursor. The claim language and the disputed phrase is clear and unambiguous.

Defendants argue that "[t]he claims require the 'position of the cursor' to be something 'the user may control the position of.' " Docket No. 46 at 13. As discussed above, "user control" is recited in the preamble of claims, and the Court is not persuaded that it needs to be read into this term. Defendants further argue that their construction is nearly identical to the language from the specification. *Id.* (citing '712 Patent at 5:32–36). Again, Defendants have failed to provide a persuasive reason why the claim language should be replaced by "nearly identical" language from the specification. The word "coordinate" does not appear in the specification, and Defendants' construction replaces four words with sixteen words. Furthermore, Defendants' construction introduces a "processor" element and a "cursor control device" element that are not recited in the claims. In sum, Defendants' construction adds ambiguity into an otherwise clear and unambiguous phrase. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties, and given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

The phrase **"position of the cursor"** will be given its plain and ordinary meaning.

### C. "a second location on the display"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a second location on the display" | Plain and ordinary meaning. | "a second location on the display that may or may not overlap with the first location" |

### 1. The Parties' Positions

The parties dispute whether the phrase "a second location on the display" requires

construction. Defendants argue that their construction provides a layperson with a clear understanding of the scope of the claim that is consistent with both the intrinsic and extrinsic evidence. Docket No. 46 at 16. Defendants contend that the specification explicitly provides for all possibilities that the second location "may or may not overlap" with the first location. *Id.* (citing '712 Patent at 6:20–23). According to Defendants, there is nothing in the record that suggests that the "second location" must (or cannot) overlap the smaller image. Docket No. 46 at 16.

Plaintiff replies that Defendants' construction adds the unclaimed requirement "that may or may not overlap with the first location." Docket No. 48 at 7. Plaintiff argues that the purpose of the claims is to specifically separate those elements from the disclosure that limit the claimed inventions from those that do not. *Id.* at 8.

For the following reasons, the Court finds that the phrase **"a second location on the display"** should be given its plain and ordinary meaning.

### 2. Analysis

The phrase "a second location on the display" appears in asserted claims 1, 7, and 9 of the '712 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The Court further finds that the claim language is unambiguous, is easily understandable by a jury, and should be given its plain and ordinary meaning.

Defendants correctly argue that their construction is consistent with the specification. Specifically, the specification states the following:

> In some embodiments, the second location does not overlap with the first location such that the first image 52 and the portion of the second image 54 do not overlap. However, the second location can overlap with the first location.

'712 Patent at 6:20–23. Thus, the specification indicates that the second location may or may

not overlap with the first location. However, specifying that a condition "may or may not" occur does not provide useful guidance to the jury, and does not add anything to the claim language. Defendants have not provided a persuasive reason to redraft the claim language as they propose. That said, the Court generally agrees with Defendants' argument, and to the extent that a party argues that the claims either require overlapping or exclude overlapping, the Court rejects this argument. The intrinsic evidence indicates that the second location may or may not overlap with the first location, and the claims are not limited to the exclusion of either condition.

### 3. Court's Construction

The phrase **"a second location on the display"** will be given its plain and ordinary meaning.

### D. "a portion of the enlarged version of the first image"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a portion of the enlarged version of the first image" | Plain and ordinary meaning. | "one or more enlarged portions of the first image having a higher resolution" |

### 1. The Parties' Positions

The parties dispute whether the phrase "a portion of the enlarged version of the first image" requires construction. Plaintiff argues that Defendants' construction is not supported because it was not included in the claims as an additional limitation. Docket No. 45 at 13. Plaintiff further argues that the word "resolution" does not appear in the specification. *Id.*

Defendants respond that patent law clearly states that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more.' " Docket No. 46 at 17 (citing *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Regarding the proposed "resolution," Defendants argue that there is no requirement that every word in a

proposed construction appear in the specification or prosecution history.  Docket No. 46 at 17.
Defendants contend the specification explains that the enlarged version of the smaller image is
an image with a higher relative pixel count.  *Id.* at 18 (citing '712 Patent at 3:55–65).  According
to Defendants, one of ordinary skill in the art would understand an "enlarged image" described
in terms of higher pixel count to refer to a higher resolution.  Docket No. 46 at 18.

Plaintiff replies that Defendants argue that their construction is "consistent" with the
specification.  Docket No. 48 at 8.  Plaintiff contends that this is not a reason to depart from the
specific limitations the patentee chose to include in the claims, and those the patentee chose to
leave in the specification. *Id.*

For the following reasons, the Court finds that the phrase **"a portion of the enlarged
version of the first image"** should be given its plain and ordinary meaning.

### 2.  Analysis

The phrase "a portion of the enlarged version of the first image" appears in asserted
claims 1, 2, 7, 8, 9, and 10 of the '712 Patent.  The Court finds that the phrase is used
consistently in the claims and is intended to have the same general meaning in each claim.  The
Court further finds that the claim language is unambiguous, is easily understandable by a jury,
and should be given its plain and ordinary meaning.

Regarding Defendants' language of "one or more," it is well established that "an
indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-
ended claims containing the transitional phrase 'comprising.' " *Baldwin Graphic Systems, Inc.
v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (citation omitted).  Here, the claims
include the transitional phrase "comprising."  Furthermore, the Court finds that the patentees did
not "'evince[] a clear intent' to limit 'a' or 'an' to 'one.' " *Id.*  Thus, to the extent that a party

argues that "a" is limited to only one, the Court rejects this argument.

Regarding Defendants' language of "having a higher resolution," the Court is concerned with providing a construction that includes the relative term "higher." It is unclear if this would result in a dispute about how much "higher" the resolution has to be to fall within the scope of the claims. Defendants are correct that an "enlarged version" is a portion of the first image that is magnified or enlarged by a factor. Specifically, the specification states the following:

> In some embodiments, the second image 54 can include the first image 52 magnified or enlarged by a predetermined factor. For example, if the first image 52 is 350 pixels wide by 200 pixels high, the second image 54 can include the first image enlarged four times such that the second image 54 is 1400 pixels wide by 800 pixels high.

'712 Patent at 3:55–65. In this example, the first image is enlarged four times. However, given that the specification does not explicitly use the term "higher resolution," the Court finds that it would read unnecessary ambiguity into the claims, and could be confusing to the jury. To be sure, the term "enlarged version" is not confusing or ambiguous, and thus, requires no construction. However, to the extent that a party argues that an "enlarged version" does not require the first image to be magnified or enlarged by a factor, the Court rejects this argument.

### 3. Court's Construction

The phrase **"a portion of the enlarged version of the first image"** will be given its plain and ordinary meaning.

### E. "enlargement application"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "enlargement application" | Not means plus function<br>Not indefinite | 35 U.S.C. § 112(6) term:<br>Indefinite" |

### 1. The Parties' Positions

The parties dispute whether the term "enlargement application" is subject to § 112 ¶ 6. Defendants contend that the phrase is a means-plus-function term governed by § 112 ¶ 6, and is

indefinite for failing to provide the required structure. Defendants argue that "application" is a "nonce" word for a "generic 'black box' for performing . . . computer-implemented functions that does not connote any particulate structure." Docket No. 46 at 19 (citing *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1349 (Fed. Cir. 2015)). According to Defendants, the term "enlargement application" is a means plus function term, and must be construed according to the corresponding structure in the specification. Docket No. 46 at 19.

Defendants further argue that the "enlargement application" is a means-plus-function term that performs functions pursuant to software of a special purpose computer. *Id.* (citing *Williamson,* 792 F.3d 1352). Defendants contend that the specification does not disclose an algorithm for performing the claimed function, and only describes the general concept of an "enlargement application." Docket No. 46 at 19. Defendants argue that Plaintiff fails to identify any algorithm in the specification and only points to other cases construing the term "application." *Id.* According to Defendants, the term "enlargement application" is invalid as indefinite under 35 U.S.C. § 112, ¶ 2 because there is insufficient disclosure of the required algorithm. *Id.*

Plaintiff argues that similar terms have been held to be not indefinite by prior courts. Docket No. 45 at 13. Plaintiff further argues that the specification explains the context and definite meaning of the phrase "enlargement application." *Id.* (citing '712 Patent at 3:56–59, 4:9–14). Plaintiff also argues that the term "enlargement application" appears in the claim preamble, and does not supply any necessary antecedent basis. Docket No. 48 at 9. Plaintiff further contends that the *Williamson* case does not mention "application" as a claim term, and the terms it does discuss are not analogous. *Id.* Finally, Plaintiff argues that dozens of other cases demonstrate that the term "application" is regularly construed by courts. *Id.*

For the following reasons, the Court finds that the term **"enlargement application"** is not governed by 35 U.S.C. § 112, ¶ 6 and is not indefinite.

### 2. Analysis

The term "enlargement application" appears in asserted claims 1, 9, and 10 of the '712 Patent. The Court finds that the term is not subject to § 112 ¶ 6. It is well settled that [a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, [¶] 6 applies." *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (quotation omitted). It is also equally understood that "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, [¶] 6 does not apply." *Id.* at 1371 (quotation omitted). The presumption against the application of § 112, ¶ 6 may be overcome if a party can "demonstrate[] that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.' " *Williamson*, 792 F.3d 1339 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "In undertaking this analysis, we ask if the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112, ¶ 6." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014) (citing *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1357 (Fed. Cir. 2011).

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Furthermore, the intrinsic evidence demonstrates that a person of ordinary skill in the art would understand the necessary structure of the "enlargement application." The term "enlargement application" only appears in the preamble of claim 1. The preamble of claim 1 recites a "method of displaying an enlarged image on a display of a client device running an enlargement application executed by a browser program." Claim 1 then

recites a number of steps to perform the recited method of displaying the enlarged image using the enlargement application. Thus, a person of ordinary skill in the art would understand that claim 1 recites sufficiently definite structure to perform the recited method.

Regarding claim 9, the term "enlargement application" appears both in the preamble and in the body of the claim. Similarly to claim 1, claim 9 recites that the enlargement application is executed by a client device, and is configured to perform a number of steps recited in the claim. Thus, a person of ordinary skill in the art would understand that claim 9 recites sufficiently definite structure for the enlargement application.

Defendants argue that "'application' is the same type of 'nonce' word for a 'generic 'black box' for performing . . . computer-implemented functions' that does not connote any particulate structure." Docket No. 46 at 19 (citing *Williamson,* 792 F.3d 1349). *Williamson* did not hold that the term "application" is a nonce word. Moreover, "[r]equiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014).

Instead, "[t]he correct inquiry, when 'means' is absent from a limitation, is whether the limitation, read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, has sufficiently definite structure to a person of ordinary skill in the art." *Id.* at 1298. Here, the answer is yes. As discussed, the claim language itself provides sufficiently definite structure to a person of ordinary skill in the art. Moreover, Figure 4 provides an exemplary embodiment of a flow chart for displaying a portion of an enlarged version of an image using the enlargement application. '712 Patent at 5:1–7 ("In some embodiments, the display process illustrated in FIG. 4 is performed with the workstation 20

executing the enlargement application 50. It should be understood that the process steps illustrated in FIG. 4 are exemplary in order and content, and the display process can be accomplished with a subset of the depicted steps or additional and alternative steps."). In sum, the claims and specification show that Defendants have failed to overcome the presumption that the claimed "enlargement application" is not a means-plus-function limitation.

### 3. Court's Construction

The term **"enlargement application"** is not governed by 35 U.S.C. § 112, ¶ 6 and is not indefinite.

### F. Preambles of Claims 1, 7, 9

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Preambles of Claims 1, 7, 9 | Not limiting<br><br>ALTERNATIVELY:<br>If preamble is determined to be limiting, Plaintiff proposes that the only terms in the preamble providing antecedent basis are "a client device" and "a display" and "a position of a cursor;" otherwise, the preamble is not limiting. | Limiting |

### 1. The Parties' Positions

The parties dispute whether the preambles of claims 1, 7, and 9 are limiting. Plaintiff concedes that the only the limitations requiring "a client device," "a display" and "a position of a cursor" are introduced in the preamble. Docket No. 45 at 14. Plaintiff argues that the claim preamble may be used as a reference point for these specific limitations, but otherwise the preamble should not limit in any way the appropriate scope and breadth of the claims. *Id.*

Defendants argue that the preamble of each of the asserted independent claims provides antecedent basis for several claim elements. Docket No. 46 at 16. Defendants also argue that

the preambles provide essential structure that operations in the body of the claims rely on, and describe how the various elements of the system interact with one another. *Id.* Defendants further contend that Plaintiff's arguments cut against the great weight of authority and should be rejected. *Id.* at 17.

Plaintiff responds that the preamble is a necessary referent for the claim limitations requiring "a client device," "a display" and "a position of a cursor." Docket No. 48 at 9. Plaintiff argues that beyond these limitation, Defendants' contention is unclear and does not overcome the general rule that a claim preamble is not limiting unless it "breathes life and meaning into the claim." *Id.* (citing *In re Wertheim*, 541 F.2d 257 (CCPA 1976)).

For the following reasons, the Court finds that the preambles for claims 1, 7, and 9 are limiting.

## 2. Analysis

"[W]hether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc* ., 329 F.3d 823, 831 (Fed. Cir. 2003). Generally, "the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). Nonetheless, the preamble may be construed as limiting if it provides antecedent basis for later claim elements. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1367–77 (Fed. Cir. 2005).

The parties agree that the preamble provides antecedent basis for the terms "a client device," "a display," and "a positon of a cursor." For example, the preamble of claim 1 recites "[a] method of displaying an enlarged image on *a display* of *a client device* running an enlargement application executed by a browser program, the client device configured to generate

a user interface in which a user may control *a position of a cursor*, the method comprising."
'712 Patent at Claim 1 (emphasis added). The body of the claim relies on the preamble for
antecedent basis by reciting "the client device," "the display," and "the positon of a cursor."
*Micron Tech., Inc. v. Tessera, Inc.*, 440 F. Supp. 2d 591, 597 (E.D. Tex. 2006) ("When
limitations in the body of a patent claim rely upon, and derive antecedent basis from, the claim
preamble, the preamble may act as a necessary component of the claimed invention.").

The Court further finds that the preambles are "necessary to give life, meaning, and
vitality" to the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir.
1999). The Background of the Invention section states that "[a]lthough some web sites or web
pages provide enlarged versions of images, *users* typically do not have control over how an
enlarged image is displayed." '712 Patent at 1:21–23 (emphasis added). The specification
further states that "[u]sers are generally not provided with tools to specify a particular portion of
an image to view as an enlarged image." *Id.* at 1:26–28. Thus, the specification emphasizes the
importance of user control over the enlarged image. The only recitation of user control is in the
preamble of claims 1, 7, and 9. For example, the preamble of claim 1 recites "[a] method of
displaying an enlarged image on a display of a client device running an enlargement application
executed by a browser program, the client device configured to generate *a user interface in
which a user may control a position of a cursor*, the method comprising." *Id.* at Claim 1
(emphasis added).

Likewise, the preamble of claim 7 recites "[a] computer-readable medium including
instructions for displaying an enlarged image on a display of a client device, the client device
configured to generate *a user interface in which a user may control a position of a cursor*, the
computer-readable medium comprising instructions for." *Id.* at Claim 7 (emphasis added).

Similarly, the preamble of claim 9 recites "[a] system for displaying an enlarged image on a display of a client device, the client device running an enlargement application executed by a browser program and configured to generate *a user interface in which a user may control a position of a cursor*, the system comprising." *Id.* at Claim 9 (emphasis added). Accordingly, the preambles are limiting because they recite the necessary user interface that provides user control, as well as provide antecedent basis for a number of terms recited in the body of the claim.

### 3. Court's Construction

The preambles for claims 1, 7, and 9 are limiting.

## IV. CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the '712 Patent. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 18th day of May, 2018.**

Robert W Schroeder III
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE